IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

TACTICAL STOP-LOSS LLC, et al., )
)
                Plaintiffs, )
)
  vs. )     Case No. 4-08-cv-00962-FJG
)
TRAVELERS CASUALTY AND SURETY )
COMPANY OF AMERICA, )
)
                Defendant. )

### SUGGESTIONS IN SUPPORT OF DEFENDANT TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S MOTION CHALLENGING QUALIFICATIONS OF PLAINTIFFS' PROFFERED EXPERT AND FOUNDATION OF PROFFERED EXPERT TESTIMONY AND TO STRIKE PROFFERED EXPERT TESTIMONY

Defendant Travelers Casualty and Surety Company of America ("Travelers") has moved in accordance with *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and this Court's Second Amended Scheduling and Trial Order (Doc. 48), to challenge the qualifications of plaintiffs' proffered expert Scott B. Lakin and the foundation of his proffered expert testimony and to strike his expert report (Doc. 51-1 and 51-2).

**I. PROCEDURAL BACKGROUND**

The Second Amended Scheduling and Trial Order (Doc. 48), required that asserting party's expert affidavit(s) be filed on or before September 15, 2009, p. 2; and provided that "[P]laintiff shall submit its expert affidavit on or before September 15, 2009; "and that "[t]e affidavit requirement is subject to the provisions of Rule 26(b)(4) of said rules [Fed.R.Civ.P.]." Paragraph 7.a.1, Second Amended Scheduling and Trial Order.

Paragraph 7 of the Second Amended Scheduling and Trial Order further provided:

> b.   One of the purposes of the expert affidavit is to set forth the substance of a direct examination. If properly done, the expert affidavit should eliminate the need for deposing some experts. Consequently, the detailed statements in the affidavit are essential.
>
> c.   A party's expert witness will be permitted to testify at trial only in conformity with that witness's affidavit unless otherwise ordered by the Court.
>
> d.   Any expert affidavit to be submitted under this section shall be filed with this Court.

On September 15, 2009, plaintiffs filed Plaintiffs' Expert Disclosure of Scott Lakin (Doc. 51), his expert report (Doc. 51-1) and his curriculum vita (Doc. 51-2).

## II. OBJECTIONS TO PROFFERED TESTIMONY

### A.  Lack of Affidavit

Contrary to the express requirements of Second Amended Scheduling and Trial Order, plaintiffs failed to file any affidavit from Mr. Lakin.

### B. Failure to Comply with Fed.R.Civ.P. 26(a)(2)(B)(iv)

Mr. Lakin's expert report fails to comply with the requirement of Fed.R.Civ.P. 26(a)(2)(B)(iv) that "the report *must contain*: . . . (iv) the witnesses qualifications, including a list of all publications authored in the previous 10 years [emphasis added]." Mr. Lakin's curriculum vitae states:

> E.  List of All Publications Authored in the Previous 10 Years
>
> Various and occasional articles and op-ed pieces between March of 2001 and January 2005. Exact titles and dates unknown.

The evident purpose of requiring disclosure of publications authored by an expert is to reduce the length of, or even eliminate, the need for an deposition of the proffered expert. By

providing a list of all publications to opposing counsel, the report is supposed serve this purpose, since such publications often provide a fruitful area for cross examination of the witness and a deposition need not be taken to obtain that information. But Mr. Lakin's report does not list any of his publications at all.

### C. Lack of requisite knowledge, skill, experience, training, or education

Mr. Lakin expresses an opinion on subjects as to which he does not possess the requisite knowledge, skill, experience, training, or education, as required by Fed.R.Evid. 702.

### D. Lack of any Basis for Opinion as to Coverage for Claim

Mr. Lakin expresses an opinion on facts as to which he does not provide any basis for his opinion, rendering it inadmissible because it is (1) not based upon sufficient facts or data, (2) not the product of reliable principles and methods, and (3) there is no way to know whether the witness has applied the principles and methods reliably to the facts of the case, as required by Fed.R.Evid. 702.

## III. AUTHORITY

### A. Generally

The admissibility and uses of expert witness testimony are governed by Rule 702 of the Federal Rules of Evidence:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 confers a "gatekeeping" role on federal courts to ensure that an expert's testimony rests on a reliable foundation and is relevant to issues. *Daubert v. Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 2795 (1993). The court's role applies to all experts, not just to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-49, 119 S. Ct. 1167, 1174-76 (1999). Moreover, the proffered testimony must be supported by appropriate validation , i.e., good grounds, based on what is known. *Daubert, supra* at 590, 113 S.Ct. 2796.

**B. Lack of requisite knowledge, skill, experience, training, or education**

In *Novak v. Progressive Halcyon Ins. Co.*, 2005 WL 5989782 (M.D.Pa. 2005), which was a suit alleging that an insurer had acted in bad faith, the plaintiff sought to call an attorney who was the former Insurance Pennsylvania Commissioner to testify as to the appropriateness of the insurer's claims handling practices. The District Court held that the witness's experience as Insurance Commissioner did not make her an expert in regard to insurance claims handling and settlement practices. That would doubly apply to Mr. Lakin in this case, as his curriculum vita (Doc. 51-2) reveals that (1) he was the Director of the Missouri Department of Insurance, (2) his written report reveals that he intends to testify on the basis of his experience as Director of the Missouri Department of Insurance as to the appropriateness of defendant's claims handling but (3) he has no experience in handling insurance claims, generally, nor (4) any experience in handling fidelity claims, specifically.

**C. Lack of any Basis for Opinion as to Coverage for Claim**

Consistent with the role of gatekeeper assigned to federal courts by *Daubert*, if an expert's opinion is based upon conjecture or speculation, it should be stricken. *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 75 (3d Cir. 1996). As the Supreme Court put it in *General Elec. Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512 (1997):

> Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

*Id.* at 146, 118 S. Ct. at 519.

Therefore, "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989). Furthermore, if an expert cannot demonstrate that his opinion is based upon all of the pertinent facts, it lacks reliability and is therefore subject to exclusion. For example, a court should not consider an expert's opinion where the expert disregarded a relevant policy exclusion. *Sciranko v. Fid. & Guar. Life Ins. Co.*, 503 F. Supp. 2d 1293, 1324 (D. Ariz. 2007).

Mr. Lakin's report violates these tenets because he states:

> Plaintiffs should be entitled to indemnity under the Policy for the loss and damage they suffered from the actions of Griffith in collusion with Fox. Upon review of the materials I believe that the Missouri Department of Insurance would have strongly encouraged Travelers to pay the claim based on the fact that Ms. Griffith did not have an ownership interest in the company and coverage appears to apply to loss and damage perpetuated by employees with no ownership interest. In my opinion, there is no good faith basis for denial.

In so doing, Mr. Lakin fails to consider the fact that the Policy (Ex. A attached to the Complaint-Doc. 1) provides at page 12 of 21:

IV. EXCLUSIONS

This Crime Policy does not cover:

B. loss resulting directly or indirectly from any fraudulent, dishonest or criminal act committed by you, your natural person partners, any LLC Member or Officer-Shareholder, *whether acting alone or in collusion with others* . . . [emphasis added].

Mr. Lakin also fails to consider the fact that plaintiffs claim that Terry Griffith was acting in collusion with Mr. Fox. Paragraphs 12-15 of the Complaint, which Mr. Lakin states that he reviewed (Doc. 51-1, p. 1 of 4) state:

> 12. Griffith was *acting in collusion* with Fox to illegally divert Tactical's and ATA's funds. Specifically, Griffith knew about Fox's unauthorized transfers (her job as COO included "reconciling" bank accounts), but she did nothing about it. Even though Griffith was a Fiduciary, she neither notified any of the owners of Tactical or ATA of the unlawful activity, nor did she take any action herself to stop it, thereby *aiding and abetting* Fox in his illegal activities.
>
> 13. In addition, when Tactical and ATA were audited in 2007 to reconcile 2006 year-end papers, Griffith affirmatively and intentionally, in order to *aid and abet* Fox and to make herself valuable to him, misled the auditors as to the financial condition of the company. Griffith misrepresented to the auditors that (1) a $1.4 million liability had been paid down to $250,000 and that the companies were continuing to pay it down; (2) that there were no "true-ups" with the insurance trust accounts at the end of every year when in fact there were; and (3) that there were no audit reports on Tactical or ATA when in fact there were.
>
> 14. The evidence demonstrates that Griffith not only *aided and abetted* Fox in stealing from Tactical and ATA (as well as the separate dedicated accounts) but that her conduct was intentional and unlawful, both by her silence and her affirmative acts.
>
> 15. Upon learning of Griffith's *collusion and involvement in the theft*, Plaintiffs promptly notified Travelers of their claim for employee theft [emphasis added].

Mr. Lakin also says that he reviewed Plaintiff Tactical Stop-Loss, LLC's Objections and Responses to Defendant Travelers' First Interrogatories and Plaintiff's Combined Supplemental Objections and Responses to Defendant Travelers' First Interrogatories. In Plaintiff Tactical Stop-

Loss, LLC's Objections and Responses to Defendant Travelers' First Interrogatories, plaintiff Tactical Stop-Loss, LLC responded to the following interrogatory as indicated below:

> 8. Please describe a detailed, precise description of all dishonest acts that Terry Griffith committed that are mentioned in the Complaint, including the dates those acts were committed.
>
> ANSWER: Plaintiff objects to this interrogatory on the grounds that a "detailed, precise description" for each illegal transfer made over a period of months is unduly burdensome and unnecessary because there were dozens of illegal or unauthorized transfers. Further, the burden of asserting the requested information is the same for Defendant as it if for Plaintiff. Accordingly, pursuant to Federal Rule of Civil Procedure 33(d), Plaintiff refers to the documents produced in response to Defendant's First Request for Production. *Plaintiff further states that, unknown to Plaintiff, Ms. Griffith had ongoing knowledge of Mr. Fox's illegal transfers and, as an officer, Ms. Griffith breached her fiduciary duty to notify an authority within the company. Additionally, Plaintiff states that Ms. Griffith actively misled auditors Stan House and Kathy Wipf in September 2007 in order to aid Mr. Fox's embezzlement.* This answer will be supplemented as appropriate [emphasis added].

In Plaintiff's Combined Supplemental Objections and Responses to Defendant Travelers' First Interrogatories, plaintiffs responded to the following interrogatory as indicated below:

> 14. Please state all facts upon which rely to support the allegations of paragraph 13 of the Complaint [which alleged that Griffith aided and abetted Fox].
>
> ANSWER: Plaintiffs object to this interrogatory on the grounds that an exhaustive request to "state all facts" is unduly burdensome. Subject to and without waiving this objection, Plaintiffs state that Terry Griffith advised James Fox to block the co-owners' efforts to hire an independent accountant to review the books. On information and belief, Plaintiffs state that Ms. Griffith recorded all general ledger and cash transactions, but knowingly kept inaccurate and fraudulent records as though no money had been embezzled. Mr. Griffith provided such fraudulent records to Timmons and Westrope. Ms. Griffith also assisted in preparing fraudulent interim financial statements that were provided to Timmons and Westrope in mid-2007. Ms. Griffith also provided fraudulent records of cash transactions to auditors for Gerber and Companion, while they were in the process of auditing underwriting, claims management, and cash transactions of their business with Tactical Stop-Loss. Further, Griffith inaccurately represented important financial information to Plaintiffs' auditors Stan House and Kathy Wipf in September 2007. Ms. Griffith indicated that a $1.4 million liability had been paid down to $250,000 and that the companies (Tactical Stop-Loss) were continuing to pay it down. Ms. Griffith incor-

rectly represented that there were no "true-ups" with the insurance trust accounts at the end of every year, when in fact there were. Ms. Griffith incorrectly stated that there were no audits on Tactical Stop-Loss, LLC or American Trust Administrators, Inc., when in fact there were. *Ms. Griffith, who had first-hand experience with all these material facts relating to the financial condition of the company, knowingly misrepresented these facts in an effort to aid Mr. Fox* [emphasis added].

The foregoing interrogatory responses demonstrate that plaintiffs' sole claim against Terry Griffith is that she acted in collusion with Mr. Fox or aided and abetted him, which is effectively the same thing as collusion. Since Mr. Lakin's opinion fails to consider the effect of the clear allegations of collusion in the Complaint and the express exclusion of coverage for loss caused not only by Mr. Fox, as an Officer-Shareholder, but also for loss caused by those acting in collusion with him, his opinion is not based upon all of the pertinent facts and instead supplies nothing but a bottom line.

Furthermore, Mr. Lakin expresses an opinion on facts as to which he does not provide any basis for his opinion, rendering it inadmissible because it is (1) not based upon sufficient facts or data, (2) not the product of reliable principles and methods, and (3) there is no way to know whether the witness has applied the principles and methods reliably to the facts of the case, as required by Fed.R.Evid. 702. Accordingly, it should be stricken.

## IV. CONCLUSION

Defendant Travelers, therefore, challenges the qualifications of plaintiffs' proffered expert Scott B. Lakin and the foundation of his proffered expert testimony and moves to strike his expert report because (1) plaintiffs failed to file any affidavit from Mr. Lakin, as required by the Second Amended Scheduling and Trial Order; (2) Mr. Lakin's expert report fails to provide a list of all publications authored in the previous 10 years, as required by Fed.R.Civ.P. 26(a)(2)(B)(iv); (3) Mr. Lakin's expert report expresses an opinion on subjects as to which he does not possess

the requisite knowledge, skill, experience, training, or education, as required by Fed.R.Evid. 702, in that he has no experience in handling claims handling insurance claims, generally, nor fidelity claims, specifically; (4) Mr. Lakin's expert report as to coverage for plaintiffs' claim is based upon conjecture or speculation and ignores the fact that Ms. Griffith's only involvement in the fraudulent scheme was by way of collusion with Mr. Fox, which brings the claim squarely within the Officer-Shareholder exclusion.

        s/ Keith Witten
        KEITH WITTEN
        GILLILAND & HAYES, P.A.
        Building 14, Suite 630
        8717 West 110th Street
        Overland Park, KS 66210
        (913) 317-5100
        Fax: (913) 317-9100
        kwitten@gh-kc.com

        **ATTORNEYS FOR DEFENDANT TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA OF AMERICA**

## CERTIFICATE OF SERVICE

     I certify that on this 9th day of November, 2009, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which sent notification of such filing to the following: Leonard Rose, Amy Loth Allen and Kate O'Hara Gasper, Lathrop & Gage, L.C., 2345 Grand Boulevard, Kansas City, MO 64108, attorneys for plaintiffs Tactical Stop-Loss, L.L.C. and TSL Holdings, L.P.; and I certify that I have mailed by United States Postal Service the documents to the following non CM/ECF participants: none.

        s/ Keith Witten
        Attorneys for defendant Travelers Casualty and Surety Company of America of America